**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

**United States of America,**

    Plaintiff,

    v.

**Miguel Rivera-Calcano,**

    Defendant.

Criminal No. 16-282-6 (PG)

### ORDER

This case rose from the federal government's efforts to take down Puerto Rico's most notorious prison gang, the ÑETA Association ("La Asociación ÑETA," in Spanish). See Docket No. 3. The ÑETA Association's main objective is to strike it rich, and to that end, members and associates have been long engaged in drug trafficking, murder for hire and other illegal activities.[1] See id. at pp. 5-7.

Pending before the court is Miguel Rivera-Calcano's ("Rivera-Calcano" or "Defendant") motion for severance (Docket No. 1178), and the United States opposition thereto (Docket No. 1179).

### I. BACKGROUND

On May 9, 2016, a grand jury returned a multicount indictment charging Rivera-Calcano and forty-nine other alleged ÑETAS of conspiracy to engage in a pattern of racketeering activity, 18 U.S.C. § 1962(d) (Count One or "the RICO count"),[2] and conspiracy to possess with intent to distribute narcotics, 21 U.S.C. § 846 (Count Two or "the drug conspiracy count"). The indictment tags Rivera as a member of "El Liderato Máximo" (or the "Maximum Leadership"), and thus, a top-leader of the organization. See Docket No. 3 at pp. 9-10. These high-ranking members purchased and oversaw the distribution of large quantities of drugs within the Puerto Rico prisons. They also controlled the income generated by the gang's illicit acts. See id. Maximum Leaders authorized and ordered the murders of other inmates as means to intimidate, protect, advance and even discipline.

Rivera-Calcano and co-defendants Rolando Millan-Machuca, Roberto Casado-Berrios, Ivan Ayala-Hernandez and Giordano Santana-Melendez will proceed to trial on September 6, 2017. All five defendants are alleged members of the "Liderato Máximo" of the ÑETA Association. See Docket No. 3.

### II. DISCUSSION

On June 29, 2017, Rivera-Calcano filed a motion for severance under Federal Rule of Criminal Procedure 14(a), requesting the court to sever his trial from that of the co-defendants substantively charged with the murders of Mario Montañez-Gomez, a/k/a "Emme" and Alexis Rodiguez-Rodriguez, a/k/a "Alexis El

---

[1] To properly frame the case, the court has culled the more salient and relevant facts from the allegations made in the indictment.

[2] Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq.

Loco," in Counts Three and Four of the indictment.[3] See Docket No. 1178; see also Docket No. 3 at pp. 24-30. Defendant argues that a joint trial puts him at serious risk of suffering prejudice due to "spillover" effects of any evidence presented with respect to the aforementioned murders.

The United States opposed Defendant's motion arguing that because the RICO count identifies murder as tool to further the ÑETA enterprise, any evidence of the murders mentioned above would be relevant to prove the existence and nature of the RICO conspiracy charge he faces. See Docket No. 1179 at pp.3-4. In other words, insofar as Defendant is accused of participating in a RICO conspiracy involving murder, evidence of those two specific murders would still be admissible to prove that charge. See id. at page 3. The court agrees.

### *Severance based on "Spillover" Effect*

Defendant's severance request is grounded on Rule 14(a), which provides, in relevant part,

> (a) Relief. If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed.R.Crim.P. 14(a). Nevertheless, the rule in this district is clear: "those 'who are indicted together should be tried together.'" See United States v. DeLeon, 187 F.3d 60, 63 (1st Cir. 1999)(citing United States v. O'Bryant, 998 F.2d 21, 25 (1st Cir. 1993)). In order to overcome the presumption in favor of joinder, a defendant must show "prejudice so pervasive that it would be likely to effect a miscarriage of justice." Id. (citing United States v. Pierro, 32 F.3d 611, 615 (1st Cir. 1994)). "This requirement means more than establishing that the defendant might have had a better chance of acquittal in a separate trial." Id. (citing Zafiro v. United States, 506 U.S. 534, 540 (1993)).

The special twist in conspiracy trials, particularly in RICO trials like the instant one, is that "[t]here generally will be evidence of wrongdoing by somebody." United States v. DeCologero, 530 F.3d 36, 53 (1st Cir. 2008) (quoting Krulewitch v. United States, 336 U.S. 440, 454 (1949) (Jackson, J., concurring)). Thus, "the unsavoriness of one's co-defendant (including past criminal conduct) is not enough, by itself, to mandate severance." Id. (citing United States v. Tejeda, 481 F.3d 44, 56 (1st Cir. 2007)).

Here, Defendant argues that the evidence to be presented at trial to prove the two murders mentioned above, which he denies having any sort of participation in, will deprive him of a fair trial. Docket No. 1178 at page 4. He believes that the spillover effect will lead the jury to infer that all members of the conspiracy were in some way or other involved in said murders, thus creating confusion, misunderstanding and animosity. Id. at page 5. Upon careful review of Defendant's motion, however, the court finds that Defendant has fallen woefully short of making the required showing of prejudice so as to warrant a separate trial. See United States v. Ramirez-Rivera, 800 F.3d 1, 44 (1st Cir.

---

[3] Millan-Machuca and Ayala-Hernandez are the two co-defendants so charged.

2015) (when the scope of a RICO conspiracy includes murder as a tool to further the enterprise, a murder is still relevant to prove the existence and nature of the RICO enterprise and conspiracy, even when a defendant is not charged with a particular murder or killing); DeCologero, 530 F.3d at 53 (same).

Insofar as the RICO conspiracy count which Defendant faces identifies murder as tool to further the ÑETA criminal enterprise, and the two particular murders previously mentioned as overt conspiratorial acts, the fact that Rivera-Calcano was not substantively and separately charged with the murders of Montañez-Gomez and Rodriguez-Rodriguez is, therefore, inapposite. Seeing as Defendant failed to put forth any other argument in support of his request, the court's severance inquiry ends here.

In light of the foregoing, the court **DENIES** Defendant's motion for severance (Docket No. 1178).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, August 29, 2017.

S/ JUAN M. PÉREZ-GIMÉNEZ
**JUAN M. PEREZ-GIMENEZ**
**SENIOR U.S. DISTRICT JUDGE**