## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

|  |  |  |
|---|---|---|
| **MIGUEL RIVERA-CALCANO,** | ) | |
| **Petitioner,** | ) | |
| | ) | **Civ. Act. No. 22—01110-TSH** |
| **v.** | ) | **(see also Crim. Act. No. 16-282-TSH)** |
| | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **Respondent.** | ) | |

## <u>Memorandum Of Decision</u>
### December  21, 2023

**HILLMAN, S.D.J.**

### <u>Background</u>

On July 11, 2018, Miguel Rivera-Calcano ("Rivera" or "Petitioner")[1] was convicted after a jury trial of violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1962(d) and 1963, and Conspiracy to Possess with Intent to Distribute Controlled Substances ("Drug Conspiracy"), in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). Rivera was sentenced to One Hundred and Fifty-Six (156) months on each count to be served concurrently followed by five years of supervised release. Rivera's direct appeal of his conviction and sentence was denied[2]. On March 1, 2022, Rivera has filed a petition to vacate his sentence under 28 U.S.C.

---

[1] Rivera is appearing *pro se* and therefore, his petition is to be "liberally construed" and "held to less stringent standards than form pleadings drafted by lawyers." *See Burton v. United States*, 495 F.Supp.3d 62 (D. Mass. 2020)(internal quotation marks and citation to quoted case omitted).

[2] On direct appeal,  Rivera challenged the reasonableness of his sentence and also claimed ineffective assistance of counsel at his sentencing hearing. The First Circuit did not address Rivera's ineffective assistance of counsel claim on the merits, rather it dismissed the claim without prejudice to address in a collateral proceeding.

§ 2255 ("2255 petition") on the grounds he received ineffective assistance of counsel at his sentencing hearing (Grounds One and Two), and that the sentencing judge violated his due process rights when determining the drug quantity for which he was responsible (Ground Three).

On March 8, 2023, Rivera filed a supplement to his 2255 petition in which he provided additional factual detail and legal analysis supporting these claims. The Court has considered the facts and arguments raised therein. On March 27, 2022, Rivera, without seeking leave of Court "supplemented" his 2255 petition to add claims that the trial judge erred by refusing to submit a lesser included offense charge to the jury "with intent to distribute" and that he was prejudiced by the Court's having allowed the jury to consider as evidence a chart describing drug amounts that was inaccurate and invalid. As to the former, the entirety of Rivera's legal analysis consists of a reference to *United States v. Boidi*, 568 F.3d 24 (1st Cir. 2009).  Moreover, Rivera does not specify the substance of the requested instruction that the Court allegedly failed to give, makes a conclusory assertion that he was prejudiced because of the Court's failure to give the unspecified instruction or explain its reason for refusing to give such instruction, and asserts that the jury was deprived of hearing all the evidence in the case as a result of the Court's failure to give such instruction. As to the latter, Rivera claims that a "chart" used to describe drug amounts in the case was inaccurate and invalid and could not be depended on. However, Rivera does not with *any* specificity identify how the information on the chart was invalid—indeed, he does not even provide the Exhibit or Identification Number ascribed to the alleged invalid "chart." Since these claims were filed within the Section 2255's one year statute of limitation period, the Court will assume they are properly before it. However, because Rivera has not asserted a sufficient factual bases nor provided an adequately developed legal analysis for these claims, the Court deems them

waived. *See Nikijuluw v. Gonzales,* 427 F.3d 115, 120 n.3 (1st Cir.2005)(it is a settled rule that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"); *see also Grafton & Upton R.R. Co. v. Town of Hopedale*, No. 4:22-CV-40080-ADB, 2023 WL 2761205, at *10 (D. Mass. Mar. 31, 2023) (the First Circuit has repeatedly stated that district courts may disregard arguments that are not adequately developed); *United States v. Robles-Alvarez*, No. CR 14-439 (PG), 2016 WL 447488, at *4 (D.P.R. Feb. 4, 2016)("It is a settled rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."(citation to quoted case omitted)).[3]

Respondent, the United States of America ("Government" or "Respondent"), argues that Rivera's claim that the Court violated his due process rights in determining the drug quantity he is responsible for fails because it is procedurally defaulted, and his ineffective assistance of counsel claims fail on the merits. For the reasons set forth below, Rivera's motion is *denied.*

---

[3] Although the Court will not address the merits of these claims, the Court notes that they should have been raised on direct appeal and because Rivera's failed to do so, they are procedurally defaulted. For the Court to excuse the default and address these claims (were they properly before it), Rivera would have to show cause for such default and actual prejudice, or establish that he is actually innocent of the crimes for which he was convicted. *See Bucci v. United States*, 662 F.3d 18, 29 (1st Cir. 2011). Rivera has failed to do so.

**Relevant Facts**

The Conviction and Presentence Matters

On July 11, 2018, after a jury trial, Rivera was found guilty of violation of RICO and being part of a Drug Conspiracy. The jury found that the Drug Conspiracy involved one or more kilograms of heroin, five or more kilograms of cocaine, and 100 kilograms or more of marijuana. That same day, sentencing was set for October 17, 2018. Rivera was represented at trial by Jose Velez-Goveo ("Velez").[4] Velez continued to represent Rivera through sentencing.

On September 7, 2018, Rivera filed a motion to have Velez withdraw from the case on the grounds that his representation constituted ineffective assistance of counsel. More specifically, Rivera accused Velez of not being honest with him and not acting in his best interest (he asserted that Velez had instead acted in the best interest of the Government), that Velez had refused to file a motion under 28 U.S.C. § 2255 on his behalf and instead told him to file it himself[5], and Rivera and Velez did not see "eye to eye." Rivera requested that new counsel be appointed to represent him going forward.

On September 26, 2018, Rivera's counsel filed a motion to extend time until October 6, 2018 to filed objections to the Presentence Report ("PSR"). That motion was denied as moot because the sentencing date was continued until November 15, 2018 (and therefore, counsel had more than adequate additional time to file objections). On November 7, 2018, the United States Probation Office ("Probation") filed an amended PSR regarding Rivera and on November 8,

---

[4] Velez was appointed to represent Rivera in May 2018 after the counsel who had been representing him from the start of the case moved to Spain.

[5] The Court notes that as Velez was likely aware, filing a Rule 2255 motion at that time would have been premature as Rivera had yet to be sentenced, judgment had not been entered and the Rule 29 motion which he had filed on Rivera's behalf was pending. The Rule 29 motion was the appropriate vehicle for challenging Rivera's conviction at that stage of the proceedings.

2018, Probation filed an addendum to the PSR. Prior to November 15, 2018, Rivera's counsel did not request a continuance to further investigate any issues raised by the PSR. On November 13, 2018, Rivera filed a motion seeking a new lawyer on the grounds that he was receiving ineffective assistance of counsel because his lawyer had not visited him at his place of incarceration to discuss the PSR. Neither Rivera nor his counsel requested that the sentencing date be continued.

The Sentencing Hearing: Rivera's Request for New Counsel

At the start of the sentencing hearing, the Court held a colloquy with Rivera regarding his motion to replace his lawyer. Rivera reiterated that his lawyer had not visited him at the prison to go over the PSR.[6]  Instead, on September 16, 2018, Velez dropped a copy of the PSR off at the prison for him to review on his own.

Velez addressed the concerns raised by Rivera. First, he confirmed that communication between he and Rivera broke down after trial to the point where they "essentially" did not communicate at all. Velez then stated that given the breakdown of communication between he and Rivera, it would be difficult to advocate zealously for him regarding issues before the Court at sentencing. He then stated that despite the difficulties between he and his client, he had "done the work" and identified at least a half dozen objections he had with respect to the PSR. Velez told the Court that it had three options: (1) allow him to withdraw from representing Rivera with

---

[6] At the sentencing hearing, Rivera stated that Velez visited for the first time the night before jury empanelment commenced. However, Rivera does not claim that he received ineffective assistance of counsel during the trial. Therefore, the Court has focused its findings on the post-trial client/counsel relationship. After trial, Velez visited Rivera in prison to explain that he had filed a motion for judgement of acquittal under Fed.R.Crim.P. 29. Velez also was present for Rivera's presentence interview with Probation. After the interview, Rivera told Velez that he was not happy with his trial representation and was going to file "a motion, a 2255," presumably raising ineffective assistance of counsel claims. From their testimony, it is apparent that after that interview, Rivera and Velez had not met face to face until the sentencing hearing.

regard to the sentencing proceedings; (2) deny his request to withdraw and permit a continuance; or (3) deny his motion to withdraw and proceed with sentencing that day. With respect to the third option, Velez suggested that his representation of Rivera that day would constitute ineffective assistance of counsel.

The Court queried Velez about what parts of the PSR he would contest and Velez responded that he would contest the offense conduct attributed to Rivera, his role in the conspiracy, whether the PSR utilized the appropriate version of the guidelines, whether an adjustment would be appropriate for his role in the offense, and information contained in the PSR relating to the factors the Court must consider under 18 U.S.C. § 3553, including Rivera's mental health and substance abuse history. Counsel noted that as to Rivera's mental health and substance abuse history, there was a significant amount of documentation which he would want to procure and bring before the Court. Velez stated he also needed additional time to obtain evidence on the probation officer's recommendation that Rivera be sentenced outside of the advisory guideline range.

The Court gave Rivera an opportunity to address the concerns raised by Velez. Rivera mentioned additional objections he would make to the PSR: the mention of disciplinary action against him taken by the prison was unfair because it had occurred five years before and was the result of a riot at the prison which resulted in a lockdown imposed on all prisoners and the PSR failed to mention he had obtained his GED. Rivera also provided the Court with significant additional details regarding his mental health and substance abuse issues.

After considering both Rivera's and Velez's positions, the Court denied Rivera's motion to have Velez withdraw (and new counsel be appointed) and further denied Velez's request for a

continuance. The Court did so after noting that all parties and the Court were aware of Rivera's

mental health and substance abuse history. The Court informed Rivera that it intended to take the

information he imparted into consideration. The Court found that counsel was equipped to

present argument on those issues as well as the other objections he and Rivera had raised

regarding the PSR without the need for further delaying the sentencing proceedings.

<u>The Parties' Positions</u>

At the sentencing hearing, Velez made substantive and detailed arguments regarding

numerous sentencing issues raised in the PSR including: (1) that in calculating the offense level,

based on the evidence presented at trial, the four-level increase for Rivera's role in the offense

was unwarranted; and (2) that his criminal history is overstated given the nature of the crimes of

which he was convicted and that he committed them to fuel his drug habit.  Velez pointed out

that disregarding the 4- level enhancement, given Rivera's criminal history (VI), his guideline

range would be 360 months to life which he vehemently argued was outrageous. Counsel

suggested that the Court should impose no more than the applicable statutory mandatory

minimum (ten years).

Rivera was also given an opportunity to voice his objections to the PSR. He too

challenged the four-level role in the offense increase. He argued (as had counsel) that to the

extent that he had any leadership role in the ÑETA organization[7], he used it to better the life of

other inmates and not for illicit purposes. Rivera objected to the mention of two disciplinary

reports he received in prison as the discipline was imposed as the result of rioting which occurred

in the prison and was given to all inmates regardless of whether they took part in the rioting. He

---

[7] ÑETA is a criminal organization comprised of inmates that operated in the Puerto Rico prison system.

also received discipline for testing positive for drugs which was the result of his addiction. Rivera also objected to the fact that it was not noted in the PSR that he had obtained his GED.

The Government argued that Rivera was a "maximum leader" of ÑETA (the highest echelon) who supervised other chapters in relation to cell phone and trafficking activities in the prison—maximum leaders had a high leadership role in the organization and controlled all the drugs and money made from cellphones. The Government also acknowledged Rivera's role included advocating on behalf of inmates. Based on Rivera's leadership role and his criminal history the advisory guideline calculation for the RICO and Drug Conspiracy charges was life in prison. The Government recommended that the Court impose a life sentence on each count.

Velez argued that a life sentence on each count was "just outrageous."  Velez pointed out while the jury found that a tremendous amount of drugs was distributed by the ÑETA organization, Rivera should not be held responsible for the  full amount and there is no evidence from the trial to establish the weight of the drugs for which he should be found responsible. For this reason, counsel advocated setting a base level for the offense of 30 to reflect Rivera was not responsible for the full amount of the drugs.[8] Velez also argued that the Court should consider Rivera's difficult upbringing and his drug addiction, both of which were significant factors in his criminal background. He further argued that Rivera is at a point in his life that he wants to get out of prison and become a productive member of society. Counsel emphatically argued that the sentence imposed on Rivera which would warrant a sufficient but not greater sentence than

---

[8] As a reminder, the PSR determined Rivera's offense level to be 44 (40 reflected the amount of drugs and there was a 4-level increase for his leadership role in the offense).

necessary and would act as deterrence to others would be ten-years' incarceration (the mandatory minimum statutory sentence) followed by five years of supervised release.

Rivera did not deny that he was involved in a prison gang (he noted that given the system it is inevitable) but did argue that he was not a leader of the organization.[9] He also argued that he was not responsible for the total amount of drugs alleged in the Indictment— he asserted that he did not sell drugs at all rather he bought drugs to support his habit. Rivera further argued that life imprisonment was far too harsh a sentence and that he was being punished for being a drug addict.

After Rivera spoke, Velez again addressed the Court and made a further objection to the PSR's calculation of Rivera's criminal history. He reiterated that the PSR overstated Rivera's criminal history based on the nature of the offenses. He also objected to the two-level enhancement that was added because the PSR erroneously determined that he was under a criminal justice sentence when the alleged conspiracy began in 2005.

<u>Imposition of the Sentence</u>

After finding that the PSR accurately applied the guideline computations, the Court considered the sentencing factors enumerated in Section 3553(a) and found that Rivera: (1) has completed his GED; (2) had been assigned work duties while incarcerated; (3) has suffered from a communicable disease since 2002; (4)  has a history of mental health treatment, including suffering from depression; (5)  has been abusing controlled substances, including cocaine, marijuana and heroin, since he was twelve years old; and (6) has a criminal history that included

---

[9] Much of Rivera's argument centered around whether there was sufficient evidence to convict him. In this discussion, the Court has focused on the arguments he made which related to sentencing.

three prior convictions. The Court also considered the elements of the offenses for which Rivera was convicted and the extent of his participation in the underlying criminal conduct and found that he was a leader of the ÑETA organization.[10]  Additionally, the Court considered the need to promote respect for the law and to protect the public from further crimes committed by Rivera, the need to promote deterrence and the need for adequate punishment.

The Court further found that Rivera's criminal history did not involve violent crimes or behavior (and therefore, was overstated), and that he had completed the state sentence he was serving during the period of the conspiracy. Considering Rivera's personal circumstances, the Court found that he had grown up without a father and had been addicted to drugs from an early age. Additionally, while he had multiple prior criminal convictions, they all relate to his drug dependency and don't involve violence. Given his background, the Court found imposition of the recommended guideline sentence to be unnecessary as it would deprive Rivera of adequate treatment and the opportunity to rehabilitate and reintegrate into society. Accordingly, the Court determined that a sentence outside the advisory guideline sentence of life imprisonment was warranted and sentenced Rivera to a term of imprisonment of 156 months on both the RICO and Drug Conspiracy convictions to be served concurrently, followed by a five-year term of supervised release.

<u>Rivera's Direct Appeal</u>

On direct appeal, Rivera, who was represented by new counsel, challenged the sufficiency of the evidence for his conviction, the admission of certain evidence and the

---

[10] The Court found that ÑETA was an organization of inmates within the Puerto Rico prison system that profits from drugs, cell phones and contract murders.  The Court found that Rivera was not charged nor was he implicated in the murders which ÑETA carried out.

reasonableness of his sentence. With respect to the sentence he received, Rivera claimed he received ineffective assistance of counsel. He also challenged the Court's finding that the leadership enhancement applied and claimed that the Court should have decreases his criminal history category because of the non-violent nature of his criminal history.[11] The First Circuit Court of Appeals affirmed Rivera's conviction and the reasonableness his sentence. *See United States v. Milan-Machuca*, 991 F.3d 7 (1st Cir. 2021).

As to his sentence, the First Circuit found that there was substantial evidence that he played a leadership role in the ÑETA drug trafficking operation and therefore, the Court did not commit clear error in finding that he was a leader or organizer. The First Circuit also noted that a finding that he was not a leader or organizer (but instead was a manager or supervisor) would not have changed his guideline sentencing range. *See id.*, at 31-32 & n. 14. As to the Court's finding that his criminal history placed him in Criminal History Category IV, the First Circuit noted that while the Court did not grant a downward departure because the criminal history category substantially overrepresented the seriousness of Rivera's crimes, it did consider the non-violent nature of his criminal history and his drug addiction as part of its Section 3353 analysis. In doing so, the Court "granted a substantial variance from the [guideline] recommendation of life imprisonment to a sentence of 156 months." *Id.*, at 32.[12] Given the significant downward variance, the First Circuit determined that the sentence imposed by the Court was not

---

[11] Rivera did not claim on direct appeal that his due process rights were violated because the Court did not make an individualized determination as to the amount of drugs attributable to him and did not hold an evidentiary hearing for this purpose.

[12] The First Circuit further noted that if the Court were to have accepted his argument and granted a downward departure because the Criminal History Category overrepresented his criminal history, the guideline sentencing range would still have been life imprisonment. Therefore, it was to Rivera's benefit that this Court addressed the issue by way of a variance from the guidelines rather than as a downward departure. *Milan-Machuca*, 991 F.3d. at 32.

substantively unreasonable. *Id.* The court dismissed without prejudice Rivera's ineffective assistance of counsel claim.[13]

## Discussion

Rivera asserts that he received ineffective assistance of counsel in violation of the Sixth Amendment during his sentencing because his counsel was not prepared. More specifically, counsel failed to discuss the PSR with him and did not prepare written objections. He further asserts that counsel was ineffective for failing to challenge the drug quantity attributable to him and for not requesting a *Fatico* hearing[14]. Finally, Rivera asserts that the Court violated his Fourth Amendment right to due process by accepting the PSR's calculation of the drug quantity he was responsible for (thus erroneously calculating his base offense level to be 38) and not holding a *Fatico* hearing.

### Review of a Petition Under 28 U.S.C § 2255

Pursuant to Section 2255 of Title 28 of the United States Code, a prisoner in custody to move the court that imposed his sentence to vacate, set aside or correct the sentence if it was: (1) imposed in violation of the Constitution or laws of the United States, (2) by a court that lacked

---

[13] It is the First Circuit's practice to dismiss without prejudice ineffective assistance of counsel claims brought on direct appeal if it determines that the record is not sufficiently developed to address the merits thereof. *See United States v. Nieves-Melendez,* 58 F.4th 569, 575 (1st Cir. 2023)("[a]s a general rule, this court does not review ineffective assistance of counsel claims on direct appeal. And the exception "where the critical facts are not genuinely in dispute and the record is sufficiently developed to allow reasoned consideration of an ineffective assistance claim" cannot apply in a situation where the defendant has only made a cursory attempt to address the issue and where we have no indication of "why counsel acted as he did.")(citation to quoted cases omitted)).

[14] "*Fatico* hearing" is a term derived from *United States v. Fatico,* 579 F.2d 707 (2d Cir.1978), which has become "shorthand for evidentiary sentencing hearings in general." *Anziani v. United States*, No. 06 CV 12121 RGS, 2007 WL 1959212, at *2 (D. Mass. July 5, 2007). Accordingly, the Court will assume that by referencing a *Fatico* hearing, Rivera is claiming that his counsel was ineffective for failing to request an evidentiary hearing to determine the amount of drugs attributable to him. Similarly, the Court will assume that with respect to his due process claim, Rivera is asserting that the Court erred by not holding such a hearing on its own motion.

jurisdiction, (3) in excess of the maximum authorized by law, or (4) otherwise subject to collateral attack. 28 U.S.C. § 2255. It is the Petitioner's burden to establish that he is entitled to relief. *David v. United States,* 134 F.3d 470, 474 (1st Cir.1998). To warrant relief under the last category, the petitioner must establish the existence of "exceptional circumstances" that make the need for redress "evident." *Id.* (citing *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468 (1962)).

When reviewing § 2255 motions, the court will issue a decision after first conducting a preliminary screening of the petitioner's claims and determining whether it is necessary to hold an evidentiary hearing (which likely would involve additional discovery and expansion of the record). A district court should dismiss the petition at the preliminary screening stage if it plainly appears from the allegations included therein, any attached exhibits, and the record of prior proceedings that the petitioner is not entitled to relief. *See* The Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 4(b). This standard is akin to the standard governing Rule 12(b)(6) motions to dismiss under the Federal Rules of Civil Procedure. *Skillman v. United States,* 941 F. Supp. 2d 188, 190–91 (D. Mass. 2013)(*citing Dziurgot v. Luther,* 897 F.2d 1222, 1225 (1st Cir.1990)(explaining that a § 2255 petition should be summarily dismissed if the petitioner's allegations, accepted as true, would not entitle him to relief, or if the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.))  If the court finds that summary disposition is not warranted, it shall so notify the Government, grant a prompt hearing on those claims as to which the petitioner could be entitled to relief, and determine the issues and make

findings of fact and conclusions of law with respect thereto. *See* 28 U.S.C. § 2255(b); *see also Burton v. United States*, 495 F. Supp. 3d 62, 70–71 (D. Mass. 2020).

In considering whether the petitioner has established the need for an evidentiary hearing, the court must assume the validity of petitioners factual averments, but "need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets." *See Burton*, 495 F.Supp.3d at 70-71 (quoting *Moran v. Hogan*, 494 F.2d 1220, 1222 (1st Cir. 1974)). A hearing is "unnecessary 'when a § 2255 Petition (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and records of the case.'" *Id.* at 71 (petition may be denied without hearing as to those allegations which, if accepted as true, entitle petitioner to no relief or need not be accepted as true because they state conclusions instead of facts, contradict the record, or are "inherently incredible") (quoting *Moran*, 494 F.2d at 71 and *Shrajar v. United States,* 736 F.2d 817, 818 (1st Cir. 1984)). "Moreover, when ... a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993); *United States v. Cassagnol*, 17-cr-10375-ADB, 2021 WL 1723845 (D.Mass. Apr. 30, 2021). In this case, given that the Court presided over Rivera's trial and sentencing and is familiar with the circumstances surrounding the claims raised in the 2255 petition, and considering the nature of those claims, the 2255 petition can be resolved based on the parties' briefing without need for an evidentiary hearing. *Accord Cassagnol*, 2021 WL 1723845,  at * 4 (ultimately, a court need not hold an evidentiary hearing).

<u>Rivera's Ineffective Assistance of Counsel Claims</u>

Pursuant to the Sixth Amendment, a defendant charged with a crime in federal court is entitled to effective assistance of counsel at all critical stages of his criminal proceedings, including sentencing. *See Strickland v. Washington*, 466 U.S. 668, 686-87, 104 S.Ct. 2052 (1984). Under *Strickland*, a defendant's Sixth Amendment rights are violated where (1) counsel's performance fell below an objective standard of reasonableness, *and* (2) the defendant was thereby prejudiced. To establish ineffective assistance under the first prong of *Strickland*, Rivera must first show that his counsel was deficient in that the quality of his representation fell below an objective standard of reasonableness. He may do so by establishing that "in light of all the circumstances, the identified acts or omissions [of his attorney] were outside the wide range of professionally competent assistance." *Tejada v. Dubois*, 142 F.3d 18, 22 (1st Cir. 1998). To make this showing, Rivera must overcome the " 'strong presumption that counsel's conduct [fell] within the wide range of reasonably professional assistance.' " *Smullen v. United States*, 94 F.3d 20, 23 (1st Cir. 1996)(citation to quoted case omitted). If counsel's performance is found to have been deficient, Rivera must show then that he suffered prejudice because of counsel's deficient performance by "demonstrate[ing] that there was a reasonable probability that but for [counsel's] errors the outcome … would have been different. For that purpose, a reasonable probability is defined as 'a probability sufficient to undermine confidence in the outcome.'" *Tejada*, 142 F.3d at 22 (citation to quoted case omitted). In analyzing whether defendant has been prejudiced the court "is not limited to outcome determination- [it] must also contemplate 'whether the result of the proceeding was fundamentally unfair or unreliable.'" *Id* (citation to quoted case omitted).

At the sentencing hearing, Rivera's counsel suggested to the Court that as a result of a breakdown in communication with his client, he was unprepared to proceed and if forced to do so, his performance would fall below the standard of a reasonably competent attorney.  After hearing from Rivera (who had requested new counsel) and Velez, the Court was satisfied that Velez was adequately prepared to argue the objections to the PSR which he and Rivera had identified to the Court. Velez then made comprehensive and passionate arguments regarding those objections and the Section 3553 sentencing factors to be considered by the Court. Based on his performance and the result achieved (counsel successfully persuaded the Court that Rivera receive a substantially below guidelines sentence), the Court does not find that Velez's performance was substandard.[15]  Nonetheless, because Velez took the position that his representing Rivera for the sentencing would constitute ineffective assistance of counsel, the Court will assume Velez's performance was objectively unreasonable and analyze whether Rivera satisfied the second prong of the *Strickland* test, *i.e.*, that he was prejudiced. *See Cassagnol*, 2021 WL 1723845 at *8 (even if lawyer's performance was constitutionally unacceptable, court must still withhold relief unless petitioner can establish that but for his lawyer's performance, there is a reasonable probability that the result of the proceeding would have been different).

Rivera asserts that Velez was ineffective because he failed to discuss the PSR with him and did not prepare written objections, because he failed to challenge the drug quantity

---

[15] With respect to Rivera's claim that counsel was ineffective for failing to request a *Fatico* hearing and failing to challenge the amount of drugs attributable to him, Velez did make an argument that none of the drugs should be attributable to Rivera. However, this was more of a passing argument rather than an express objection to the Court's failure to make an individualized finding as to the amount of drugs attributable to Rivera. Were the Court to address the first *Strickland* prong (rather than assuming it had been met), it is likely the Court would find that on this issue, counsel's performance was substandard.

attributable to him, and because he failed to request a *Fatico* hearing.  I will address the claims in turn.

<u>*Counsel's Failure to Discuss the PSR with Petitioner and Failure to File Written Objections*</u>

I have assumed that Velez's failure to discuss the PSR with Rivera and to file written objections constituted substandard performance. The only prejudice identified by Rivera as the result of his lawyer's incompetence, is that he was sentenced in accordance with the recommendations contained in the PSR. However, the record is clear first that Rivera received a copy of the PSR well before the sentencing hearing and had ample time to review it—indeed, he voiced his own objections thereto.  Moreover, despite having failed to review the PSR or file written objections thereto, at the hearing Velez raised multiple objections to the PSR and strongly advocated for a sentence that was at the low end of the guidelines.  More specifically, Velez argued that Rivera should not be deemed a "leader" (and therefore, the role of offense enhancement should not apply) and that his criminally history was overstated given the non-violent nature of his crimes. Counsel further argued that the guideline sentencing range stated in the PSR (360 months to life)  was outrageous and that Rivera should receive the statutory mandatory minimum.  Except for failure to object to the drug quantity attributable to him (addressed below), Rivera has not identified any other objections which counsel should have made to the PSR written or otherwise. As to Velez's failure to have discussed the PSR with Rivera in advance of the sentencing hearing, the Court agrees that Velez should have done so. However, Rivera has not identified how he was prejudiced by Velez's failure to meet with him to go over the PSR.  On the contrary, after Velez's fervent argument on Rivera's behalf, this Court imposed a sentence that was *well below* the suggested guideline range. Simply put, Rivera has

not pointed to any objections which Velez could have made, written or otherwise, or how any discussions between he and Rivera prior to the sentencing hearing would have resulted in a more favorable sentence.  For that reason, as to this claim, the Court finds that he has failed to satisfy *Strickland's* prejudice prong.

### Failure to Request a Fatico Hearing or to Challenge the Attributable Drug Quantity

For purposes of this discussion, I have also assumed that Velez was ineffective for failing to request a *Fatico* hearing or otherwise failing to challenge the amount of drugs attributable to Rivera for purposes of calculating his base offense level.  Whether Rivera was prejudiced thereby is determined by whether the parties and, ultimately, the Court erred in finding that Rivera was responsible for the entire drug amount attributed to the conspiracy.  For this reason, the Court will first address Rivera's third ground for relief,  *i.e.*, his due process violation claim. If Rivera's prevails on that claim, then it necessarily follows that he was prejudiced by his counsel's failure to request that the Court hold an evidentiary hearing before finding him responsible for the entire drug amount distributed by ÑETA during the conspiracy. On the other hand, if the Court finds with respect to that claim that there was no due process violation, then Rivera cannot establish prejudice under the second prong of *Strickland* and this claim must be denied.

### Ground Three: Rivera's Due Process Claim

Rivera argues that his due process rights were violated when the Court did not make an individualized assessment as to the amount of the drugs attributable to him. Rivera further argues that for purposes of making its determination as to the amount, the Court should have held an evidentiary hearing, referred to as a *Fatico* hearing. The Government argues that this claim has

been procedurally defaulted as it was not raised on direct appeal.  The Court agrees. To cure the

obvious default, Rivera must demonstrate cause and actual prejudice, *or* that he is actually

innocent. *See Bucci*, 662 F.3d at 29.  As pointed out by the Government, Rivera has failed to

even recognize the default and even if he did, has not established cause/prejudice[16] and cannot

establish actual innocence.  Nonetheless, because Rivera claims that his trial counsel was

ineffective for failing to request a *Fatico* hearing, and for not objecting to the Court's failure to

make an individualized finding as to the amount of drugs attributable to him, the claim will be

addressed on its merits.

Rivera did not file an appeal regarding the Court's failure to make an individualized

finding as to the amount of drugs attributable to him, however, his co-defendant, Roberto

Casado-Berrios ("Casado"), who was similarly situated to Rivera, did file such an appeal. More

specifically: (i) Casado was convicted of the same charges as Rivera, (ii) at sentencing, the Court

found Casado was a "leader" of the conspiracy (resulting in a 4-level role in offense

enhancement), (iii) the Court did not make an individual assessment of the amount of drugs

attributable to him, and (iv) the Court found that Casado was responsible for the entire amount of

drugs attributable to the conspiracy.  In cases involving drug trafficking conspiracies the

sentencing judge must " 'make an individualized finding as to drug amounts attributable to, or

foreseeable by, th[e] defendant,' " *see Millan-Machuca*, 991 F.3d at 30 (citation to quoted case

omitted, alteration in original).  Nevertheless, the First Circuit rejected Casado's contention that

his sentence must be overturned due to the Court's failure to make an individualized

---

[16] Rivera was represented by new counsel on appeal.  He has not challenged the effectiveness of appellate
counsel.

determination as to the amount of drugs attributable to him.  In doing so, the First Circuit  held that given that Casado was a "high-level leader in  ÑETA … [and] was an active participant in and supervisor of large-scale drug trafficking … it was reasonable under these circumstances to attribute [to him] the full [amount of the drugs attributed to the conspiracy] … Such a finding follows inexorably from the conclusion that he was a high-level leader of the conspiracy." *Id.* at 30-31.

Likewise, the Court did not expressly find that Rivera was responsible for the entirety of the drugs ÑETA distributed during the conspiracy. However, as with Casado, "that finding is unmistakable in the court's explanation of its sentencing decision.". *Id.*, 31 at n. 13. It is worth restating at this point in the discussion that as part of Rivera's direct appeal, he challenged the Court's finding that he was a "leader" of the conspiracy which resulted in a 4-level role of offense enhancement. The First Circuit held that this finding was not error. The Court acknowledges, it would have been better practice for it to have *expressly* found that the entire drug amount distribute by ÑETA during the conspiracy was attributable to Rivera rather than inferentially accepting the PSR's attribution of the entire amount to him. Nevertheless, given his leadership role in the ÑETA organization, it was reasonable to for the Court to have done so and it can clearly be inferred that such a finding was part of the Court's sentencing decision. Therefore, Rivera cannot establish a violation of his right to due process and Ground Three of his Petition is denied.

Because Rivera is unable to establish a due process violation, it follows that he cannot establish that he was prejudiced by his counsel's assumed substandard performance. Therefore, Ground Two of Rivera's Petition alleging ineffective assistance of counsel for failure to request a

*Fatico* hearing and not objecting to the Court's failure to make an individualized finding of the drug amount attributable to him is *denied.*

## **Certificate of Appealability**

"Section 2253(c) of Title 28 of the United States Code provides that a Certificate of Appealability may issue 'only if the applicant has made a substantial showing of the denial of a constitutional right.' In order to make a 'substantial showing,' a petitioner seeking a Certificate of Appealability must demonstrate that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. To meet the debatable-among-jurists-of-reason standard the petitioner must prove 'something more than the absence of frivolity or the existence of mere good faith.' " *United States v. Cintron*, 281 F. Supp. 3d 241, 242 (D.Mass. 2017). No reasonable jurists could debate this Court's finding that Rivera has failed to establish that he received ineffective assistance of counsel at sentencing, or more specifically, assuming his counsel's performance fell below an objective standard of reasonableness, that he was not prejudiced by his counsel's substandard performance. Additionally, no reasonable jurists could debate this Court's finding that Rivera's right to due process was not violated by the Court's failing to make an individualized finding of the amount of drugs attributable to him. Therefore, a certificate of appealability shall not issue with respect to any of Rivera's grounds for relief.

**<u>Conclusion</u>**

It is Ordered that:

Defendant's Motion To Vacate Set Aside, Or Correct A Sentence By A Person In Federal

Custody (Docket No. 1 in 22-01110-TSH; Docket No. 3401 in 16-282-TSH) is ***<u>denied</u>***.


**/s/** ***Timothy S. Hillman***
TIMOTHY S. HILLMAN
SENIOR U.S. DISTRICT JUDGE